<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JOHN CROCAMO and<br>MICHAEL MIDDLETON,<br><br>           Plaintiffs,<br><br>           v.<br><br>HUDSON COUNTY CORRECTIONAL<br>CENTER, OSCAR AVILES, DIRECTOR<br>and ERIC ROBERTS, DEPUTY<br>DIRECTOR,<br><br>           Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 06-1441 (PGS)<br><br><br><br>**OPINION** |

This is a motion for summary judgment by the two remaining defendants - Director Oscar Aviles ("Aviles") and Deputy Director Eric Roberts ("Roberts") of the Hudson County Correctional Center ("HCCC"). Roberts and Aviles argue that plaintiffs ("Crocomo" and "Middleton"), former pre-trial detainees, have presented no evidence to support their allegations that the defendants violated plaintiffs' constitutional rights pursuant to 42 U.S.C.A. §1983.

Plaintiffs contend that certain conditions at HCCC, where they were detained prior to sentencing, violated their due process rights. Curiously, plaintiffs' complaints mirror those alleged in another matter where the district court held that the intolerable condition of HCCC constituted grounds for a downward departure under the sentencing guidelines. *United States v. Francis*, 129 F. Supp. 2d 612 (S.D.N.Y. 2001). At oral argument, plaintiffs emphasize that they contracted a skin rash while incarcerated at HCCC which was treated with hydrocortisone as prescribed by a physician. In addition, they allege they were exposed to Hepatitis, HIV and AIDS contagions, but

they admit they do not suffer from such ailments, nor do they submit any expert testimony to confirm that such are communicable by airborne transmission. They also witnessed fights among inmates which prison guards ignored, but concede they were never subject to any brutality. Lastly, plaintiffs complain that defendants failed to permit access to certified mail. As a result, their lawyers who represented them in their respective criminal matters either did not receive mail or mail was inordinately delayed. Neither plaintiff indicates, with any degree of particularity, how such alleged denial to certified mail interfered with their right to a fair trial or their right to representation. Their Complaint is somewhat broader. Therein they allege overcrowded conditions (triple bunking), unsanitary drinking water, lack of heat, cold food, and inadequate cleaning supplies. In April, 2006, Crocomo was removed from HCCC and in November of that same year Middleton was relocated.[1]

In support of their motion, defendants rely on several certifications which are briefly described below. According to Director Aviles, HCCC handles and houses several thousand inmates and a number of detainees at the request of Immigration and Custom Service officials annually. The housing pods consists of 32 cells divided into two tiers. They are designed for two inmates per cell but some are triple bunked. The original bunks are on the back wall of the cell. The third bunk was put along the left wall of the cell. There are several feet between that bunk and the toilet/sink which is to the right of the cell as you enter. In addition, Aviles declares health care services are provided by an outside vendor who makes available regular and continual medical care to inmates. Water is supplied by a public water company and hot showers are provided.

Buddy Fontinella provided an affidavit concerning heating at HCCC. He certifies that the temperature of inmate areas is monitored throughout the day and the temperature is recorded in a log

---

[1] Plaintiffs' Complaint seeks monetary and injunctive relief; but plaintiffs abandoned equitable relief at oral argument.

book every two hours. There is a contractor who inspects and verifies the accuracy of the equipment about twice a week. Ray Bianconi, the food service liaison at HCCC, states that two hot meals and one cold meal are provided each day to each inmate. The hot meals are transported to the inmate in thermo trays to keep them warm. HCCC contracts with Aramark, a food service provider, to provide the meals. Rose Verga, the mail room clerk, indicates that the mail is processed pursuant to the inmate handbook. Inmates have access to certified mail so long as the inmate pays for it.

I.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir.1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged

by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

II.

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment. See *Hubbard v. Taylor*, 399 F.3d 150 (3d Cir.2005); *Fuentes v. Wagner*, 206 F.3d 335, 341 (3d Cir.2000). Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by

the standards set out by the Supreme Court in *Bell v. Wolfish*, 441 U .S. 520 (1979). *Hubbard*, 399 F.3d at 157-60, 164-67; *Fuentes*, 206 F.3d at 341-42.

In *Bell*, the Court evaluated the constitutionality of conditions or restrictions of pretrial detention. In broad terms, the Court held that restrictions and conditions of confinement did not offend the Constitution unless they amounted to punishment. The Court stated that pretrial detention:

> implicate[s] only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law . .
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention . . .
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees . . .

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n. 20. Nor are grossly exaggerated responses to genuine security considerations. *Id.* at 539 n. 20, 561-62.

III.

With this standard in mind, the Court addressed the laundry list of plaintiffs' complaints.

A.  <u>Triple Bunking (overcrowded conditions)</u>

Plaintiffs complain that, as a pretrial detainees, they were living in an overcrowded prison, at over 150% capacity for approximately 10 months. Director Aviles acknowledges that certain cells, designed for two inmates, are "triple bunked." The housing pods consist of 32 cells divided into two tiers. Two bunks are situated on the back wall of the cell. For those cells which are "triple bunked," a third bunk is placed along the left wall of the cell, several feet from the toilet and sink. The plaintiffs argue the third bunk was within inches of the toilet and sink. The facts do not indicate that plaintiffs were being punished but, rather, that triple-celling occurred because the institution ran out of bed space. Overcrowding has become a fact of life in prisons, and the need for inmates to be housed in a secured location underlies this legitimate governmental purpose. See, *Bell v. Wolfish*, 441 U.S. at 539-540, 99 S.Ct. 1861.

As is well established, it is peculiarly within the province of correctional officials, based on their expertise, to determine whether conditions are related to a legitimate government interest, and the court should give deference to the correctional officials' opinions unless it is shown that they have blatantly exaggerated. *Bell v. Wolfish*, 441 U.S. at 547-548, 99 S.Ct. 1861; *Hubbard*, 399 F.3d at 159. Here, prison officials determined that triple-celling pretrial detainees was a reasonable

method to deal with the overcrowded conditions at HCCC.

In conducting the Fourteenth Amendment analysis to evaluate punishment of pretrial detainees, the Supreme Court has not "elaborate[d] upon the kind of privations and hardship that could constitute punishment in violation of the Due Process Clause." *Hubbard*, 399 F.3d at 159 (citing *Bell*, 441 U.S. at 542, 99 S.Ct. 1861). However, the Court has cautioned that "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." *Bell*, 441 U.S. at 542, 99 S.Ct. 1861. In the pretrial detainee context, conditions violating the due process rights of a pretrial detainee are those which are arbitrary and purposeless. *Bell*, 441 U.S. at 539, 99 S.Ct. 1861.

A substantial number of Courts have addressed the issue of whether requiring a pretrial detainee to sleep on the floor constitutes punishment. The District Court of Delaware has held that a pretrial detainee plaintiff was not punished by being forced to sleep on the floor of his cell for a three to seven month period. *Hubbard v. Taylor*, 452 F.Supp.2d 533 (D.Del.2006); see also, *Brookins v. Williams*, 402 F.Supp.2d 508, 512-13 (D.Del.2005) (pretrial detainee not punished when forced to sleep on the floor for a five day period); but see *Yelardy v. Taylor*, Civ. No. 03-1032-GMS, 2006 WL 680660 at *8 (D.Del. Mar. 14, 2006) (forced to sleep on a mattress on the floor of a cell for over 22 months stated a claim that the pretrial detainee's due process rights may have been violated). It has been determined that a pretrial detainee forced to sleep on the floor on many occasions over a two-year period was not punishment. *Askew v. Fairman*, 880 F.Supp. 557 (N.D.Ill.1995)(analyzed under the Eighth Amendment). There was no Fourteenth Amendment violation when a pretrial detainee was forced to sleep on the floor for an extended time during a four-month period. *Jones v. Sheehan*, 1993 WL 153829 (N.D.Ill.1993). Other courts have found that

requiring a pretrial detainee to sleep on a mattress on the floor violates the Fourteenth Amendment "without regard to the number of days for which a prisoner is so confined." See *Lyons v. Powell*, 838 F.2d 28 (1st Cir.1988); *Vazquez v. Gray*, 523 F.Supp. 1359 (S.D.N.Y.1981). Here, however, the plaintiffs were never required to sleep on the floor, but in a third bunk. Moreover, inmates are allowed out of their cells on a daily basis from 7:00 a.m. to 12:30 p.m. and from 2:30 p.m. to 9:00 p.m. for various activities. Thus, this Court finds that no reasonable jury could find such housing to amount to punishment.

### B. Cold Food, Inadequate Heating, and Lack of Cleaning Supplies

Defendants have provided the certification of an individual in charge of food service at HCCC regarding temperature maintenance for hot meals and delivery of meals to prisoners in their cells. They have also provided evidence regarding the HCCC's procedures for maintaining and monitoring an appropriate temperature throughout the facility. Additionally, the certification of the defendant director explains that all inmates are given cleaning supplies by the corrections officers. Plaintiffs have failed to rebut these proofs. See *Jones v. Green*, 2006 WL 3677934 (D.N.J. 2006). Rather, plaintiffs point to a case out of the Second Circuit, *United States v. Francis*, 129 F.Supp.2d 612 (S.D.N.Y. 2001), to support their contention of intolerable conditions at the HCCC. However, *Francis* concerns a motion for downward departure, in part, for enduring intolerable conditions at HCCC from June 9, 1998 until July 29, 1999. The findings in *Francis* bear no relation to the conditions as they existed while plaintiffs were housed at HCCC which ranged from May 2005 to November 2006. The proof is that HCCC undertook reasonable safeguards to provide food through an experienced vendor, maintain adequate temperatures at the facility, and had cleaning supplies accessible on a reasonable basis. There is no evidence of punitive motivation on the part of HCCC officials.

C. <u>Unsanitary Drinking Water</u>

With respect to the allegations regarding unsanitary drinking water, plaintiffs have not produced any evidence upon which a reasonable jury could find a constitutional violation had occurred. The mere allegation that plaintiffs' skin became dry or developed a rash or "minor skin infections," without any other evidence, cannot alone establish that the water caused a serious illness. In addition, plaintiffs acknowledge it was treated with ointment. See *Ford v. Mercer County Correctional Center*, 171 Fed.Appx. 416, 421 (3d Cir. 2006). The proof is potable water is supplied by a utility which supplies water to the general population of Hudson County.

D. <u>Exposure to HIV and AIDS</u>

The Supreme Court has recognized that exposure to contagious diseases may violate the Eighth Amendment if prison officials, acting with deliberate indifference, expose a prisoner to a sufficiently substantial "risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (holding that exposure to environmental tobacco smoke states an Eighth Amendment cause of action even though inmate was asymptomatic because the health risk posed by involuntary exposure to second hand smoke was "sufficiently imminent"). The Supreme Court also noted that inmates were entitled to relief under the Eighth Amendment where they proved threats to personal safety from the mingling of inmates with serious contagious diseases. See *id.* at 33.

Courts interpreting this language have held that inmates can state an Eighth Amendment claim for confinement in a cell with an inmate who has a serious contagious disease that is spread by airborne particles, such as tuberculosis. See *Bolton v. Goord*, 992 F.Supp. 604, 628 (S.D.N.Y.1998)(acknowledging that prisoner could state Eighth Amendment claim for confinement in same cell as inmate with serious contagious disease, such as tuberculosis, but rejecting claim in this case because prisoner had not shown that inmates with active infectious tuberculosis were

double-celled).

Courts consistently have held, however, that confinement in the same cell as an HIV-positive inmate does not violate the Eighth Amendment. See *Bolton*, 992 F.Supp. at 628 (finding that inmate was not injured by exposure to HIV-positive inmate in double cell because HIV is not airborne or spread by casual contact); see also, e.g., *Glick v. Henderson*, 855 F.2d 536, 539 (8th Cir.1998) (holding that prison's failure to segregate inmates with HIV/AIDS did not violate Eighth Amendment); *Oladipupo v. Austin*, 104 F.Supp.2d 626, 635 (W.D.La. 2000) (same); *Deutsch v. Federal Bureau of Prisons*, 737 F.Supp. 261, 267 (S.D.N.Y. 1990)(same); but see, *Massick v. North Central Correctional Facility*, 136 F.3d 580 (8th Cir.1998) (holding that sharing cell with HIV-positive inmate who was bleeding could subject healthy inmate to substantial risk of harm). In this case, plaintiffs do not allege they were in the same cell with an inmate who has HIV, but only such inmates were in the same pod. Moreover, plaintiffs do not substantiate this claim. There is no record or medical proof that an HIV infected inmate was actually in their pod.

Although there is no case directly on point, the same logic used in Eighth Amendment claims applies here where the Fourteenth Amendment is implicated. Accordingly, housing an inmate in the same pod with an HIV/AIDS infected inmate absent other circumstances is not a form of punishment at all and does not give rise to a violation under the Fourteenth Amendment.

E. Exposure to Hepatitis

Plaintiffs' claim regarding Hepatitis, however, is not so clear. It is common knowledge that there are several types of Hepatitis (A, B, C, D, & E). While each type of Hepatitis can be spread in various ways, the Hepatitis viruses are generally not considered to be airborne pathogens. Hepatitis A and E are known only to be transmitted to humans by fecal-oral route (that is, by ingestion of contaminated water or food products with fecal material containing the virus). The remaining types of Hepatitis viruses (B,C, & D) which can be more severe and are more likely to

lead to chronic or more severe complications, are known to be transmitted to humans only by direct exposure to infectious body fluids including blood, vaginal or seminal fluid contact, or from mother to fetus. However, this Court is not qualified to state definitively how the viruses are transmitted without the assistance of an expert, and the plaintiffs have not provided any such expert report.

Defendants have provided a synopsis of its medical policy which consists of an initial screening by medical personnel to determine the inmates medical history whether an inmate has a particular medical problem which requires immediate medical attention, such as an infectious or contagious disease. Based on this examination, the inmate is classified accordingly by the medical staff. According to defendants, upon a classification an inmate may be sent to a hospital, assigned to the medical unit, housed in the infirmary, or sent to general population. If an inmate is sent to general population, an inmate can request a medical visit, should a medical issue arise, by filling out an appropriate form. Furthermore, if an inmate is observed, by either the staff or other inmates, to be in need of medical care, such services are accessible at the infirmary or, if necessary, a hospital. Although defendants do not explain what HCCC's policy is for housing inmates with Hepatitis, it is reasonably clear that there are policies to safeguard the health of the detainees which undermine any showing of punishment to the defendants.

In addition, this portion of the claim must be dismissed because plaintiffs fail to properly allege an "actual injury," that is, an "injury in fact," which is concrete in both a qualitative and temporal sense. See *Whitmore v. Arkansas*, 495 U.S. 149, 152, 110 S.Ct. 1717, 1720 (1990). Plaintiffs must allege an injury that is "distinct and palpable," as opposed to merely "abstract," and the alleged harm must be "actual" or "imminent," not "conjectural" or "hypothetical." *Id.* at 155, S.Ct. at 1723. Although plaintiffs allege that they are housed with inmates infected with Hepatitis, they do not allege that they contracted Hepatitis from exposure, a point conceded at oral argument. Because plaintiffs have no "actual injury," this Court "is powerless to create its own jurisdiction by

embellishing deficient allegations of standing." See *Whitmore*, 495 U.S. at 155, 110 S.Ct. at 1723. In short, without any evidence, and in light of the case law regarding Fourteenth Amendment violations based on conditions of confinement, the Court concludes that plaintiffs lack standing to assert their claim based on infectious diseases and no reasonable jury could find in plaintiffs' favor on the remaining issues.

F. Access to Certified Mail

Lastly, plaintiffs allege that the HCCC does not honor or provide access to certified mail, thereby circumscribing inmates' access to the courts. Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests. See *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987). A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation. *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir.1975), cert. denied, 424 U.S. 973 (1976).

Here, plaintiff alleges a pattern or policy by HCCC officials in denying certified mail for no apparent penological purpose. This allegation, although general, suggests that the HCCC officials are deliberately interfering with the inmates' legal mail, which is usually sent and received by certified mail. The defendants refute this allegation by producing its mail policies. As part of those policies, inmates may send materials by certified mail so long as they pay for it. The plaintiffs do not refute same. Such a policy is reasonable and not a means of punishment. Neither plaintiffs have set forth any facts to show an actual injury with respect to this claim. Only vague unsupported complaints have been set forth. See *Ford v. Mercer County Correctional Center*, 171 Fed.Appx. 416, 421 (3d Cir. 2006). Accordingly, this claim is also dismissed.

IV.

In summary, plaintiffs' Complaint is dismissed, in its entirety, with prejudice.


April 18, 2007
                       *s/Peter G. Sheridan*
                       PETER G. SHERIDAN, U.S.D.J.